IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| O.P. SCHUMAN & SONS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-3563 |
| | : | |
| DJM ADVISORY GROUP, LLC, et al. | : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                             February 16, 2017

      Plaintiff O.P. Schuman & Sons, Inc. brings this putative class action alleging Defendants DJM Advisory Group, LLC, Banner Life, and William Penn Life Insurance Company violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by transmitting a single-page facsimile advertising Defendants' term life insurance that did not include the opt-out notice required by 47 C.F.R. § 64.1200(a)(4). Defendants move to dismiss this action for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), to stay or dismiss the case pursuant to the first-filed doctrine, or, in the alternative, to strike Plaintiff's proposed class definition pursuant to Rule 12(f). Plaintiff argues that if the Court finds the first-filed rule applies, this case should be transferred to the Middle District of Florida where an earlier related action is pending. Because the Court finds relief is warranted under the first-filed rule, Defendants' motions to dismiss are granted insofar as the case will be transferred to the Middle District of Florida. Defendants' motions to dismiss for lack of standing and to strike Plaintiff's proposed class definition are denied.

**BACKGROUND**[1]

In April 2013, Defendants sent a single-page facsimile transmission to Plaintiff advertising Defendants' term life insurance. Plaintiff did not invite or provide permission to Defendants to send the facsimile, and the facsimile did not include an opt-out notice that complied with 47 C.F.R. § 64.1200(a)(4). According to the Complaint, Defendants sent the same facsimile to more than 39 individuals around the country. As a result of receiving the facsimile, Plaintiff and the other recipients suffered damages, including loss of paper, ink toner, the use of their fax machines, the use of telephone lines, time, and privacy.

Plaintiff alleges the sending of the facsimile without a compliant opt-out notice violated the TCPA. Plaintiff seeks to pursue a TCPA claim on behalf of:

> All persons who were sent one or more telephone facsimile messages on or after four years prior to the filing of this action, that advertised the commercial availability or quality of any property, goods, or services offered by "DJM," "Banner Life Insurance Company," or "William Penn Life Insurance Company," that did not contain an opt-out notice that complied with federal law.

Compl. ¶ 25.

**DISCUSSION**

Defendants argue the Complaint should be dismissed because Plaintiff lacks Article III standing as it has failed to plead a concrete and particularized injury, and at most has pleaded a de minimis injury. The "irreducible constitutional minimum of standing consists of three elements": (1) an "injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

---

[1] The following facts are drawn from the Complaint, the allegations of which the Court accepts as true for purposes of deciding the instant motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule 12(b)(6) motion to dismiss should "assume the[] veracity" of the complaint's "well-pleaded factual allegations").

*Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks and citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Id.* at 1548. A plaintiff does not satisfy the injury-in-fact requirement by merely alleging a statutory violation. *See id.* at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Plaintiff alleges Defendants' actions "caused the recipients to lose paper and toner," "used the fax machines of Plaintiff and the other class members," "cost Plaintiff time," and "unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone." Compl. ¶ 54. Such allegations sufficiently allege concrete and particularized harm, as they set forth more than a "bare procedural violation." *Spokeo, Inc.*, 136 S. Ct. at 1549; *see Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980 (9th Cir. Jan. 30, 2017) (holding "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," and are thus sufficient for standing purposes); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251-53 (11th Cir. 2015) (holding the successful transmission of a single unsolicited fax may constitute a "concrete and personalized injury in the form of the occupation of [the recipient's] fax machine for the period of time required for the electronic transmission of the data" and is thus sufficient to establish Article III standing); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (finding Article III standing where the plaintiff suffered a "violation of the statutorily-created right to have one's phone line and fax machine free from the transmission of unsolicited advertisements" by receiving a fax transmission on two occasions). Plaintiff thus has Article III standing to pursue this case.

3

Defendants further argue this matter should be dismissed or stayed pursuant to the first-filed doctrine, as an earlier-filed and substantively similar putative class action complaint was filed against the same Defendants in the Middle District of Florida on December 21, 2015, seven months before Plaintiff filed the Complaint in this case. *See JWD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 15-793, 2016 WL 6835986 (M.D. Fla. Nov. 21, 2016). Plaintiff argues that if the Court finds the first-filed rule applies, this case should be transferred to the Middle District of Florida. The Florida action is based on the transmission of the same facsimile at issue in this case, and the allegations in that case are substantially the same as the allegations here—namely that, in violation of the TCPA, Defendants sent the plaintiff and others unsolicited commercial advertisements by facsimile. The proposed class definition in the Florida case is also substantially similar to the class definition in this case:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, and (3) which Defendants did not have prior express permission or invitation [to send], or (4) which did not display a proper opt-out notice. Excluded from the Class are the Defendants, their employees, agents and members of the Judiciary.

*Id.* at *5. Defendants contend discovery in the Florida action is well underway. On November 21, 2016, the judge in the Florida case denied Defendants' motion to dismiss or strike.

The first-filed rule, "grounded on equitable principles," provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971, 977 (3d Cir. 1988) (internal quotation marks and citation omitted). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank," by guiding "courts of equal jurisdiction to exercise forbearance to avert conflicts and to avoid 'interference with the process of each other.'" *Id.* at

4

971-72 (quoting *Kline v. Burke Const. Co.*, 260 U.S. 226, 229 (1922)).  The "applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align.  Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one."  *Villari Brandes & Kline, PC v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009).  "[T]he critical substantive inquiry of the first-filed rule analysis is subject matter."  *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 457 (E.D. Pa. 2013).  If a court finds the first-filed rule applies, it may "stay, enjoin, or transfer a later-filed action."  *Keating Fibre Int'l, Inc. v. Weyerhauser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006).

It cannot be disputed that this case and the Florida action share the same subject matter, as the plaintiffs in both cases allege they received the same facsimile from Defendants, in violation of the TCPA.  The proposed class definitions are also similar.  Although the proposed class in the Florida action also includes fax recipients who did not consent to receive advertisements from Defendants, regardless of whether the faxes included the opt-out notice, the Florida class subsumes the class in this case.  As such, the first-filed rule applies.

Plaintiff argues that Defendants have opposed class certification in the Florida action, and thus "cannot have it both ways" by arguing the first-filed rule applies here.  Pl.'s Resp. 2.  However, Defendants are not trying to "have it both ways," as they admittedly oppose class certification in both actions and do not assume the class in the Florida action will be certified.  The cases Plaintiff cites are inopposite.  *See In re Feggins*, No. 14-1049, 2014 WL 7185376, at *3 (M.D. Ala. Dec. 16, 2014) (where second-filed action was brought by an individual plaintiff, finding it "disingenuous" that the defendant argued against class certification in the first-filed action, "meaning that each putative class member should bring his own suit," while arguing in

the second-filed action the plaintiff's remedy was in the first action); *Swetra v. Directv*, No. 15-8761, 2016 WL 4208440, at *3-4, 6 (D.N.J. Aug. 9, 2016) (finding that, unlike cases with "overlapping proposed class actions," the defendants could not "represent[] to another judge that a class action is 'unworkable,'" and argue to the court in the second-filed action that the plaintiff "is part of the same proposed class requiring that [the court] must take away [his] ability to litigate individually at this time," especially where the plaintiff's claims would not necessarily fall within the class in the first-filed action); *Martin v. Medicredit, Inc.*, No. 16-1138, 2016 WL 6696068, at *5 (E.D. Mo. Nov. 15, 2016) (finding the first-filed rule did not apply for several reasons, including "the presence of different defendants and significant disparities in the definitions of the putative classes," "the issues in the case[s] [did] not sufficiently overlap," and the early stage of the first-filed action, as well as the defendants' opposition to class certification in the first-filed action because they "assume[d] for purposes of its motion . . . that a class [would] be certified" in the first-filed action). Thus, Defendants take a consistent position against class certification. Rather than having two district courts decide class certification for two substantially similar classes, where Plaintiff's claims necessarily fall within the Florida action class, it makes good sense for a single court to make such decisions for the sake of comity and consistency.

Plaintiff further argues the unsettled posture of class certification in the Florida action weighs against application of the first-filed rule, as the class could change in definition or scope, or the district judge in Florida could deny class certification. *See* Pl.'s Resp. 3-4 (citing *Wilkie v. Gentiva Health Servs., Inc.*, No. 10-1451, 2010 WL 3703060 (E.D. Ca. Sept. 16, 2010)). The Court declines to speculate as to how the Florida litigation may proceed. Further, in *Wilkie*, the court found the requirements for the first-filed rule were not met because the two actions sought

6

different relief, had different class definitions with differing sub-classes, and raised different issues. *See* 2010 WL 3703060, at *4-5. The unsettled procedural posture of the first case was merely an additional consideration of equity, as it was unclear whether the two proposed classes included the same employees. *Id.* at *5. Here, where the similarity of the cases is substantial, and no potential class members in this case would be excluded from the Florida class, the unsettled posture of class certification in Florida does not weigh against application of the first-filed rule.

Having determined the first-filed rule applies, the Court must decide whether to dismiss, stay, or transfer the case. Dismissal is not warranted. *See Chavez v. Dole Food Co.*, 836 F.3d 205, 220-21 (3d Cir. 2016) (holding "in the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit," as "[e]ven a dismissal *without prejudice* may create unanticipated problems"). The Court chooses to transfer rather than stay this case, as resolution of both cases within the same district, and potentially by the same judge, is in the interest of the parties, witnesses, and judiciary. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (finding transfer the proper course of action because "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed"); *Cadenasso v. Metro. Life Ins. Co.*, No. 13-5491, 2014 WL 1510853, at *11 (N.D. Cal. Apr. 15, 2014) (holding, where the first-filed rule applied, transfer, rather than a stay, of the second-filed case was appropriate).

Transfer is appropriate under 28 U.S.C. § 1404(a), as the "litigation would more conveniently proceed and the interests of justice be better served by transfer to" the Middle District of Florida. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also*

7

*Thompson v. Glob. Mktg. Research Servs., Inc.*, No. 15-3576, 2016 WL 233702, at *4 (E.D. Pa. Jan. 20, 2016) ("[P]ermitting 'a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent.'" (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990))). Transferring this case to Florida, where discovery has progressed, will potentially allow one judge to preside over the two similar lawsuits, avoiding potential conflict between courts, and promoting judicial economy and efficiency. *See Thompson*, 2016 WL 233702, at *5 (finding transfer of second-filed case to the district already overseeing discovery in an earlier filed action would "potentially result in more streamlined discovery and a more efficient resolution of claims," which would "both conserve judicial resources and be more convenient for the parties and the witnesses"). Transfer also comports with the "strong policy favoring the litigation of related claims before the same tribunal." *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 55 (D. Del. 1975).

Defendants move in the alternative to strike Plaintiff's proposed class definition because it alleges an impermissible fail-safe class. "In a putative class action case like this one, a plaintiff may generally conduct discovery relevant to the Rule 23 class certification requirements and a court should, therefore, only grant a motion to strike class allegations if class treatment is evidently inappropriate from the face of the complaint." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)). A motion to strike therefore may be granted "when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." *Id.* (internal quotations marks and citations omitted).

"A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *Id.* at 623 (quoting *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012)). Thus, a fail-safe "class definition requires a determination on the merits before members are identified." *Id.* at 624.

It is not readily apparent whether Plaintiff's class is fail-safe. Although the class incorporates elements of a viable "junk fax" claim, including the applicable statute of limitations, *see* 47 U.S.C. § 227(b)(1)(C); 28 U.S.C. § 1658(a), it does not rely on ascertaining whether potential class members' provided Defendants permission or invitation to send the facsimile, as in the Florida case. *See JWD Auto.,* 2016 WL 6835986, at *4; *compare Zarichny*, 80 F. Supp. 3d at 615 (holding the plaintiff's putative TCPA class was "fail-safe" because it was "comprised of those people who received . . . telephone calls without the recipient's 'prior express consent,'" rendering it not readily ascertainable (citing 47 U.S.C. § 227(b)(1)(A)(iii))), *with Abella v. Student Aid Ctr., Inc.*, No. 15-3067, 2015 WL 6599747, at *4 (E.D. Pa. Oct. 30, 2015) (distinguishing *Zarichny* and holding the plaintiff's putative TCPA class was not fail-safe where there was no reference to use of an automatic telephone dialing system—a required element for a claim under the TCPA—and the plaintiff was "not relying on potential class members' word when determining whether they gave . . . consent"). Moreover, the Third Circuit has not yet ruled on the permissibility of fail-safe classes. *See Zarichny*, 80 F. Supp. 3d at 615 (citing cases). In any event, as this case will be transferred, the court in Florida may decide the permissibility of Plaintiff's proposed class at the class-certification stage. *See JWD Auto., Inc.*, 2016 WL 6835986, at *5 (holding that although "the proposed class appears 'fail-safe,'" the question would be "more appropriately raised at the class-certification stage").

For the reasons set forth above, Defendants' motions to dismiss the Complaint are granted insofar as the Court agrees relief is warranted under the first-filed rule. In lieu of staying or dismissing this case, however, the case will be transferred to the Middle District of Florida, where an earlier related action is pending. Defendants' motions to dismiss for lack of standing are denied. Defendants' motions to strike Plaintiff's proposed class definition are also denied.

An appropriate Order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, J.